E. P. TITMAN, APPELLEE, v. W. C. COOPER, APPELLANT.

FILED JUNE 23, 1919. No. 20317.

Bills and Notes: DIRECTION OF VERDICT. In an action on a promissory note, when the defense pleaded is failure of consideration, it is not error for the trial judge to direct a verdict for plaintiff, when the proof adduced by defendant in support of his plea is merely speculative and contingent, and has no basis of fact.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Fawcett & Mockett* and *M. F. Stanley,* for appellant.

*J. H. Grosvenor, contra.*

ALDRICH, J.

This is a law action instituted to recover on a promissory note given February 8, 1913, the sum of $275 and interest at 7 per cent. This note was given in part payment for the purchase price of one certain stallion. There was a trial to the jury, with the result that the trial court directed a verdict for plaintiff for the full amount of his claim. Defendant appeals.

The execution and delivery of the note are admitted, and, as a defense to plaintiff's action, defendant alleges no consideration. The horse in question was purchased on Ferbruary 8, 1913, and died March 18 of the same year. It is claimed that the plaintiff misrepresented the health and general condition of the horse, and that at the time of the purchase, or thereabouts, the horse was afflicted with a rupture "along the diaphragm in the rib tissue—along the back and upper part of the intestines and as far back as the kidneys, and the lungs were somewhat abscessed; the breach was right over the lungs, and that seemed to be the seat of the inflammation." This was shown by a *post mortem* examination which was had by a competent veterinarian. All parties agree that the conditions as found by this *post mortem* was the real cause of the animal's death. Now, the question is: Did the horse have this rupture at the time of the purchase, or thereabouts? Was it afflicted with this fateful situation at the time the contract was made and the horse delivered?

There is no fact brought out as to whether the horse was afflicted with the rupture that caused his death at the time of purchase. When the horse was afflicted with this rupture and these conditions which led to its death is only a theory, and not a fact. There is no question

but what the horse died from the inflammation arising from the rupture; but the question is: What was the ultimate cause of this rupture, and, further, when was it produced? From the evidence as disclosed in the record, that is a mere theory, a mere speculation, so remote and so contingent as to be wholly unreliable as a basis for a verdict. This rupture, it is admitted, was from six to ten inches long, and just ahead of the stomach, over the lungs, and it was lengthwise of the stomach through the inner tissue and inner muscle, and it did not break through the outer tissue, and consequently left a sack there, and the food had leaked through. This appears from the evidence of Dr. Powers, it being admitted that the time this affliction of the horse occurred it was mere speculation, and is only an opinion at the best as to what was his condition in regard to this malady at the time of purchase. This being true, there could be no ultimate fact for the jury to pass upon. "From your examination of the breach, or this cut, and from the circumstances of it, what is your opinion as to how long a horse affected that way would survive a wound of that kind?" This was a question propounded to Dr. Powers, veterinarian. His reply was: "That is a pretty hard question to answer, Judge, because as I said—the conditions—he might last much longer under certain conditions than others; it would only have to be a matter of opinion, that is all. Q. What is that opinion, Mr. Powers? A. Why, the condition of that breach, in my opinion— The Court: I don't think that is the question. The question is, how long he would live. A. I can give my opinion; and I say that, in the condition I found the breach, the horse might live, in my opinion, he might live two weeks, and he might die in three or four days: Inflammation would have to set up and get to the vital parts, and he might live quite awhile. I wouldn't want to make a statement as to how long he would live." Further on in the questions propounded to Dr. Powers, this question was

asked: "Do I understand from your statement that this is merely a matter of opinion, or conjecture? A. Just simply an opinion, because it is the first case I ever had like it and I couldn't find any very good authority on it. Q. And do you mean for the jury to understand that from that examination you were not, in that particular case, able to tell how long that breach had existed? A. No, sir, I don't know."

This is the evidence of the defendant's witness, and he would be presumed to give the most favorable view possible under the facts, and from the defendant's own theory, and from his own witness, we are unable to state whether this breach, or rupture, afflicted the horse at the time of the purchase, or whether it was in the condition that it was found at the time of the *post mortem*. There is nothing definitely known as to the cause of this breach or rupture, or *when it occurred*. Then a proposition like this submitted to the jury would simply allow them to delve into the realm of speculation, and if they found a verdict it could not be based upon fact, but upon mere speculation. In our opinion, in this theory of the defendant's case, he has not made a successful defense.

The next proposition, although rather remote, and we hardly see what materiality there is in it, is on the question of the insurance. It appears from the record that one Call, a member of the association that owned the horse, wrote insurance on domestic animals, and that he solicited the defendant for insurance upon this horse, and it was agreed that the horse should be insured for $500, with a premium of $50. The record disclosed that is as far as the transaction ever got; that neither party ever solicited the other to complete the transaction, and it was left entirely open, with the result that at the time of the horse's death, through the carelessness of both parties, the horse was never insured. Then, from all the record and the evidence of the case, we think the trial judge was right in directing a verdict for the

plaintiff, as the defendant did not offer any tangible evidence productive of real facts that would in any way show why he should not be held as liable on the note he gave for the purchase price of this horse.

Therefore we conclude the verdict of the jury and the finding of the court must be

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.